## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA BUTLER,        ) | |
|        ) | |
|        ) | |
| **Plaintiff,**        ) | |
|        ) | |
| **v.**        ) | **Case No. 23-CIV-344-RAW** |
|        ) | |
| **KEVIN BRANSCUM and**        ) | |
| **MATTHEW YOUNGBLOOD,**        ) | |
|        ) | |
|        ) | |
|        ) | |
|        ) | |
| **Defendants.**        ) | |

## <u>ORDER</u>

Before the court is the motion of defendant Branscum to dismiss plaintiff's second amended complaint. Plaintiff proceeds *pro se*, and his allegations are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

The second amended complaint (#37) alleges that on August 17, 2023, plaintiff was pursued while driving his truck by defendant Branscum (a "District Attorney Investigator")[1]. At some point in the pursuit, plaintiff's truck stalled. Plaintiff put the truck in Park, and turned off the ignition. Plaintiff placed both hands on the steering wheel. About two minutes later, the patrol car driven by Branscum approached and "T-boned" plaintiff's truck.

---

[1] Defendant Youngblood has not filed a motion to dismiss at this time.

Plaintiff struck his head on a roof pillar in the truck and his head was then struck again by the truck's deployed air bags. Branscum approached the truck on foot and yanked plaintiff out of the truck. Branscum began wrestling with plaintiff. Defendant Youngblood (Deputy Sheriff for McIntosh County) arrived on the scene and shot plaintiff twice with a taser.

At this time, plaintiff was lying on his back with his legs straight out and arms straight out above his head. Youngblood handed the taser to Branscum and then jumped on plaintiff's stomach. Branscum again "tased" plaintiff. Youngblood began striking plaintiff in the face, using handcuffs as a weapon. Ultimately, plaintiff was arrested. Plaintiff's pregnant wife, a passenger in his truck, suffered a miscarriage from the incident.

To survive Rule 12(b)(6) F.R.Cv.P., a plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Shipps v. Grove,* 2023 WL 3221931, *1 (10th Cir.2023)(citation omitted). A claim is facially plausible when the complaint contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court must construe the allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff. *Id.*

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188,

1192 (10th Cir.2012). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Movant raises qualified immunity. Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity. *Thomas v. Kaven,* 765 F.3d 1138, 1194 (10th Cir.2014). Asserting a qualified immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment. *Hemry v. Ross,* 62 F.4th 1248, 1253 (10th Cir.2023). This is because at the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *Id.*

When a defendant claims qualified immunity, the plaintiff must show (1) the defendant violated his constitutional rights; and (2) the law was clearly established at the time of the alleged violation. *Id.* Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. *Id.*

Thus, the Supreme Court has stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. *Id.* If the plaintiff fails to satisfy either prong of qualified immunity, his suit fails. *Id.*

3

Accordingly, the court has discretion to decide the order in which these two prongs should be addressed, and need not address both. *Id.*

Excessive force claims are assessed under a "reasonableness" standard. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 1258. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the following three factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

The motion also presents an issue of civil procedure. Defendant has attached as an exhibit the dashcam video of the chase itself. Generally, the sufficiency of a complaint under Rule 12(b)(6) must rest on its contents alone. *McNellis v. Douglas Co. Sch. Dist.,* 2024 WL 4128804 n.3 (10th Cir.2024). If a district court looks outside the contents of the complaint, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. *Id.* There are, however, exceptions to this rule. Courts are permitted to review documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *Id.* Defendant contends that the video is central to plaintiff's claim in that the vehicle chase constitutes the

4

bulk of plaintiff's allegations. Also, under "relief sought," plaintiff requests that the dashcam video be subpoenaed "to further support my claim." (#37 at page 7 of 9 in CM/ECF pagination). In plaintiff's response to the present motion (#46) he does not indicate he disputes the video's authenticity.

There is a split of authority among district courts in the Tenth Circuit on this issue. Some cases rely (and some do not) on a footnote in an unpublished decision. In *Myers v. Brewer,* 773 Fed. Appx. 1032, 1035 n.2 (10th Cir. 2019), the Tenth Circuit stated that a court could consider police bodycam audio and video if referenced in the complaint. The matter being within the court's broad discretion, this court will consider the video – and has viewed it.[2] By considering a document referred to in the complaint, indisputably authentic, and central to the plaintiff's claim, the court need not convert the motion to one for summary judgment. *See Pace v. Swerdlow,* 519 F.3d 1067, 1072 (10th Cir.2008).[3]

The dashcam video does "blatantly contradict" plaintiff's allegations as to the car chase. Plaintiff's truck had gone into a ditch, and as the police vehicle approached, the truck was moving and on its way to leaving the ditch. The police vehicle employed a TVI ("tactical vehicle intervention") maneuver as a means to stop plaintiff's truck from escaping. Qualified immunity has been granted regarding the use of a PIT ("precision immobilization

---

[2]*See also Bell v. City of Southfield,* 37 F.4th 362, 364 (6th Cir.2022)("[W]hen uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos.").

[3]Where there is video evidence, the court continues to accept all well-pleaded allegations as true unless they are "blatantly contradicted" by the record. *Estate of Ronquillo ex rel. Estate of Sanchez v. City & Cnty. of Denver,* 720 Fed.Appx. 434, 437 (10th Cir.2017).

technique") maneuver, a variant of TVI against a nonviolent misdemeanant. *See Moore-Jones v. Quick,* 909 F.3d 983, 985-87 (8th Cir.2018). In any event, it is by no means "clearly established" that Branscum's conduct as to the vehicular chase was a constitutional violation.[4] Qualified immunity is appropriate as to the car chase.

This does not dispose of plaintiff's entire claim as to Branscum, however. As plaintiff notes in response (#46), he has also alleged he was "tased" multiple times, some of which were by Branscum. The court has no video before it of the post-TVI conduct. Under the standard appropriate to a motion to dismiss, qualified immunity will not be granted at this time as to such conduct. *See, e.g., Wilkins v. City of Tulsa,* 33 F.4th 1265, 1277 (10th Cir.2022)("Our precedent clearly established that force against a subdued suspect who does not pose a threat violates the Fourth Amendment.").

Defendant also notes that plaintiff has been convicted in state court of some of the charges for which he was arrested, which includes resisting arrest. Defendant relies on *Heck v. Humphrey,* 512 U.S. 477 (1994), which held that a §1983 suit for damages that would necessarily imply the invalidity of the plaintiff's conviction or sentence is not cognizable, unless it has been reversed or otherwise invalidated. This court disagrees that *Heck* is applicable under the present record. "[A] conviction for resisting arrest can coexist with an officers' use of excessive force." *Edwards v. Harmon,* 2019 WL 6841980, *3

---

[4] The "clearly established" prong is sufficient to dispose of plaintiff's claim as to the car chase. Dismissal would also seem appropriate on the first prong of qualified immunity. Under the *Graham* factors, plaintiff does not dispute that he was charged with serious crimes such as kidnapping. The dashcam video establishes the other two factors.

(E.D.Okla.2019)(citing cases). A lawful arrest may be effectuated in an unlawful manner. The present motion will not be granted in this regard.

Defendant also moves for dismissal as to the plaintiff's §1983 claim in his official capacity. This aspect of the motion will be granted. "It has long been established states, state agencies, and state officials acting in their official capacities are not 'persons' under §1983." *Thomas v. Knutson,* 2024 WL 2076315, *3 (10th Cir.2024).

Defendant moves for dismissal of plaintiff's wrongful death claim. Plaintiff has not responded to this contention and the court finds it to be well-taken. *Cf. Sanchez v. Muskogee Cnty. Sheriff,* 2022 WL 19521763, **2-3 (E.D.Okla.2022)(wrongful death claim is creature of state law and is not cognizable under §1983; also, Oklahoma's governmental immunity statute bars the wrongful death claim under state law).

Finally, defendant seeks dismissal of plaintiff's request that defendant be criminally charged. This will also be granted. *See Keyter v. 535 Members of 110th Cong.,* 277 Fed.Appx. 825, 827 (10th Cir.2008)(a private citizen has no standing to initiate federal criminal prosecutions).

It is the order of the court that the defendant's motion (#43) is hereby granted in part and denied in part.

Plaintiff's claims against defendant Branscum are dismissed, with the exception of the §1983 claim regarding defendant's conduct after stopping plaintiff's vehicle.

7

Defendant's previous motion (#22) is deemed moot in light of the second amended complaint.

**ORDERED THIS 27th DAY OF SEPTEMBER, 2024.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

8